UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 10401

KEILE ALLEN, individually and
on behalf of all others similarly situated,

        Plaintiff,

    -against-

FISHER-PRICE INC., a Delaware
Corporation, and MATTEL, INC., a Delaware
Corporation, each separately and on behalf of
all other entities similarly situated,

        Defendants.

07 CV _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, Keile Allen, by and through her undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased the Fisher-Price toy Medical Kit manufactured, imported, and/or distributed by Fisher-Price, Inc. ("Fisher-Price") or Mattel, Inc. ("Mattel") (collectively referred to as "Defendants"), between October 2003 to the present (the "Relevant Period"), containing lead paint.

2. Despite marketing its toys as safe for young children, Defendants distributed their toy Medical Kits that have been made using surface paint containing lead which is poisonous to children, especially if ingested.

3. During the relevant period, Defendants Fisher-Price and Mattel have manufactured or caused to be manufactured, marketed and/or distributed approximately thousands of toy Medical Kits designed for young children, who can be expected to lick, suck, bite on the toys causing chips, and/or ingest the poisonous lead paint. Defendants Fisher-Price

and Mattel did so despite clear regulatory prohibitions on the use of lead paint on toys, its knowledge that the ingestion of lead paint by children can cause serious long-term injury, and its representations that its Medical Kits are safe for children.

4. The substance lead builds up in a person's system, and even small amounts can remain in the person's system and can add on to other sources of lead leading to potentially harmful levels in a person's system.

5. In October 2007, Consumer Reports published their findings that the Medical Kits contained dangerous levels of lead. *See New Worries over lead*, www.ConsumerReports.org (attached as Composite Exhibit A). Despite knowledge that their Medical Kits contain dangerous amounts of lead paint, Defendants have not recalled or offered to reimburse Plaintiff or other members of the Plaintiff Class for the costs of the Medical Kits.

6. The toys produced and manufactured, marketed and/or distributed by Defendants are not fit for their ordinary use and are of no value to consumers. Consumers purchasing them, including Plaintiff, did not receive the benefit of their bargain.

7. As a result of Defendants' negligent and reckless conduct, Plaintiff's children and the children of members of the Plaintiff Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an increased risk of being poisoned by lead. Early detection of lead poisoning, through medical testing, is made necessary and advisable by the Defendants' manufacturing, marketing, and sale of the Medical Kits painted with lead pigment.

8. Accordingly, Plaintiff brings this action to recover the actual and compensatory damages for herself and the Class, as well as to recover the costs of diagnostic testing necessary to detect lead poisoning for their children resulting from Defendants' actions.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this state, and Defendants have sufficient minimum contacts with this state and otherwise intentionally avail themselves of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in the Southern District of New York because Defendants reside in this District.

## PARTIES

11. Plaintiff Allen is and has been a resident of Miami-Dade County Florida during the Relevant Period. Specifically, Plaintiff purchased and owns a toy Medical Kit. Plaintiff purchased this product in Miami, Florida during the Relevant Period. Ms. Allen's young children have played with the Medical Kit.

12. Defendant Fisher-Price is a Delaware Corporation doing business in the state of New York and throughout the entire United States. Fisher-Price sells its products through chain retailers, specialty retailers, wholesalers, and original equipment manufacturer dealers, as well as directly to consumers. Fisher-Price operates throughout the world, including in the United

States, Canada, Mexico, Europe, Australia, and Asia Pacific. The company was founded in 1930 and is a wholly owned subsidiary of Mattel, Inc. Fisher-Price's headquarters are in East Aurora, New York. It also maintains offices in Manhattan, within this district. Websites are maintained by them that reach out, *inter alia*, nationally throughout the United States and Canada. Fisher-Price's position in the toy market supports and substantiates their appointment as Defendant Class representatives.

13. Defendant Mattel, Inc. wholly owns and operates Defendant Fisher-Price. Mattel is the self-proclaimed worldwide leader in the design, manufacture and marketing of toys and family products. Mattel sells its products through chain retailers, specialty retailers, wholesalers, and original equipment manufacturer dealers, as well as directly to consumers. It manufacturers and distributes such brands as Barbie®, Hot Wheels®, Matchbox®, American Girl®, Radica® and Tyco® R/C, as well as Fisher-Price® brands, including Little People®, Power Wheels® and a wide array of toy lines. With global headquarters in El Segundo, California, Mattel sells products in more than 150 nations. Mattel also maintains offices in Manhattan, within this district. Mattel's position in the toy market supports and substantiates their appointment as Defendant Class representatives.

## STATEMENT OF FACTS

### A. DEFENDANTS MARKETED TOY MEDICAL KITS AS "SAFE AND QUALITY PLAYTHINGS" DESPITE THE FACT THEY ARE COATED WITH LEAD PAINT

14. Defendants' marketing campaign for toy Medical Kits is built around assuring parents that its toys are safe for children.

15. Plaintiff and other members of the Plaintiff Class were deceived by Defendants' material omissions and failure to state that the Medical Kits are were coated with lead paint, and purchased the Medical Kits believing that the toys were safe for their children to play with as

4

children normally do, including with the expectation that their toddlers would place the toys in their mouths while playing.

16. Despite their clear representations that the Medical Kits were safe for children, Defendants distributed the Medical Kits, which contain lead paint.

17. The Medical Kits were sold at various retailers throughout the United States during the relevant period for Fisher-Price. The Medical Kits are made with surface paints containing lead. Thus, the very young children who Defendants expected to lick, suck, bite on the toys causing chips, and/or ingest the poisonous lead paint on the Medical Kits have now been exposed and may be further exposed to poisonous lead that can cause serious long-term injury. Upon information and belief, Defendants distributed thousands of the Medical Kits containing lead paint.

**B. DEFENDANTS KNEW OR SHOULD HAVE KNOWN OF THE DANGERS OF LEAD PAINT ON CHILDREN'S TOYS**

18. Exposure to lead causes a wide range of health effects that vary from child to child. Even low levels of exposure to lead can result in IQ deficits, learning disabilities, behavioral problems, stunted or slowed growth, and impaired hearing.

19. At increasingly high levels of exposure, a child may suffer kidney damage, become mentally retarded, fall into a coma, and even die from lead poisoning.

20. Lead poisoning has been associated with a significantly increased high school dropout rate, as well as increases in juvenile delinquency and criminal behavior.

21. For these reasons, the Consumer Product Safety Commission ("CPSC") has declared that "[t]oys and other articles intended for use by children that bear 'lead-containing paint'" are "banned hazardous products."

22. Accordingly, Defendants knew or should have known that manufacturing and

distributing Medical Kits coated with paint containing any amount of lead was dangerous to children and such toys were not safe as Defendants and other members of the Defendant Class represented them to be.

## C. THE TESTING OF THE MEDICAL KITS

23. *Consumer Reports®* and ConsumerReports.org® are published by Consumers Union ("CU"), an expert, independent nonprofit organization whose mission is to work for a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves. To achieve this mission, they test, inform, and protect. To maintain their independence and impartiality, CU accepts no outside advertising, no free test samples, and has no agenda other than the interests of consumers.

24. CU's National Testing and Research Center, in Yonkers, N.Y., is the largest nonprofit educational and consumer product testing center in the world. More than 100 testing experts work in seven major technical departments--appliances, auto test, baby & child, electronics, foods, health & family, and recreation & home improvement, while more than 25 research experts work in three departments--product acquisition, product information, and statistics & quality management.

25. In October 2007, ConsumerReports.org published CU's findings regarding the lead content on the Defendants' Medical Kit. *See* Comp. Ex. A at 1. In pertinent part, the report states that:

> "Four months of reporting and testing by *Consumer Reports* found that lead is in array of everyday items and that they system that should protect consumers has gaping holes. Here's what we found: Our lab tests detected at widely varying levels in samples of dishware, jewelry, glue stick caps, vinyl back packs, children's ceramic tea sets, and other toys and items not on any federal recall list. Samples of a Fisher-Price blood pressure cuff that is part of a toy medical kit has surface lead in worrisome amounts. Parent should remove this toy from use."

6

Comp. Exhibit A at 1.

26. As second report states that the CU's "tests found high total lead levels in three new samples of a red bold pressure cuff from class Fisher-Price Medical Kits purchased in the New York area and three samples from the homes of employees of Consumers union, the nonprofit publisher of *Consumer Reports*. We detected the highest concentration of total lead 10,000 parts per million, in a cuff that a child had regularly played with for the past two years." Comp. Ex. A at 2.

27. Although Defendants Fisher-Price and Mattel have not recalled any of their toy Medical Kits, they have recommended that children exposed to the lead paint tainted toys should be taken in for lead poisoning testing.

28. Plaintiff seeks a full refund for all amounts spent on these defective toys by herself and all other Plaintiff Class members similarly situated.

29. Moreover, as a result of Defendants' negligent and reckless conduct, Plaintiff's children and children of members of the Plaintiff Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an increased risk of being poisoned by lead. Accordingly, Plaintiff also seeks to recover the costs of diagnostic testing necessary to detect lead poisoning to their children resulting from Defendants' actions.

30. Upon information and belief, Defendants have not notified the Consumer Product Safety Commission and the public of the hazardous nature of its Medical Kits. The CPSC is currently investigating Defendants' failure to properly disclose the dangers of other products. This is not the first occasion in which Defendants have been investigated for such conduct. In March 2007, Fisher-Price was fined $975,000 for not notifying authorities quickly enough about a choking hazard in a toy from its popular Little People product line. In 2001, Mattel paid $1.1

million for a similar infraction regarding safety defects in its Power Wheels toy vehicles.

## CLASS CERTIFICATION

31. This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories who purchased Medical Kits that contained lead paint during the Relevant Period, which were imported and/or distributed by Defendants.

32. Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendants. It is estimated to be tens of thousands or more.

33. Plaintiff's claims are typical of those of other Plaintiff Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

34. Plaintiff is a member of the Plaintiff Class.

35. There are numerous and substantial questions of law and fact common to all of the members of the Plaintiff Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

   a) Whether the products are defective;

   b) Whether the products should be recalled;

   c) Whether the products are inherently dangerous;

   d) Whether Plaintiff and members of the Class purchased the products;

   e) Whether Defendants are refusing to reimburse Plaintiff and the members of the Plaintiff Class for the cost of the products;

   f) Whether, as a result of Defendants' negligent and reckless conduct, children have been exposed to a known hazardous substance;

   g) Whether early detection, through medical testing of children, of lead poisoning is made necessary and advisable by the Defendants' manufacturing, marketing, and

sale of Medical Kits painted with lead pigment;

h) Whether Defendants are required to pay for the costs of lead testing;

i) Whether Plaintiff and other members of the Plaintiff Class are entitled to injunctive relief;

j) Whether Defendants have been unjustly enriched;

k) Whether Defendants' conduct has amount to an unfair and deceptive practice under New York law and/or similar laws of other states; and

l) Whether Plaintiff and Plaintiff Class members were damaged and in what amount.

36. Defendants' conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Plaintiff Class as a whole pursuant to Rule 23(b)(2).

37. A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

a) Without a class action, the Plaintiff Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

b) Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and (iii) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

c) This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision;

d) Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a

class action is the best (if not the only) available means by which members of the Plaintiff Class can seek legal redress for the harm caused them by Defendants.

## CLAIMS FOR RELIEF

### COUNT I

(Violations of Consumer Protection Laws)

38. Plaintiff re-alleges paragraphs 1 through 37 as if fully set forth herein.

39. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the various consumer protection statutes applicable in each of the fifty states, the District of Columbia, and the territories of the United States, when it engaged in the conduct described in this Complaint. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and members of the Class were injured in that they paid millions of dollars for Defendants' dangerous products that they would not have paid had Defendants not engaged in unfair, unconscionable, deceptive or fraudulent conduct.

40. The unfair and deceptive acts and practices of Defendants have directly, foreseeable, and proximately caused damages and injury to Plaintiff and the members of the Class.

41. Plaintiff is a purchaser of the Medical Kit.

42. Plaintiff and class members reasonably relied upon Defendants' misrepresentations and omissions in purchasing Medical Kits with lead paint. By reason of the unlawful acts engaged in by Defendants, Plaintiff and the class members have suffered ascertainable loss and damages. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the class members were damaged by paying for Medical Kits that they otherwise would not have paid for and by paying amounts for but for such wrongful conduct.

43. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and members of the class are entitled to compensatory damages, treble damages, attorneys' fees, costs of suit and such other or additional remedies as provided for under applicable statutes.

44. Upon information and belief, Defendants knew or should have known of the defect at all material times, but did not disclose the defect to consumers.

45. Even though Defendants knew or should have known of the defective nature of the products, they continued to sell the products to consumers without properly disclosing or correcting the defect.

46. Defendants' sales practices were deceptive, misleading, and intended to increase their own profits to the detriment of consumers. Defendants have profited from the uniform deceptive practices and marketing campaigns, in that Defendants were able to sell hundreds of thousands of products that they could not have sold absent their deceptive marketing campaigns, causing Plaintiff and the Plaintiff Class substantial injuries.

47. Plaintiff and other members of the Class were deceived by Defendants' failure to disclose the dangers of its products that contained toxic levels of lead paint. Defendants would not have been able to sell their dangerous products had they properly disclosed the fact that the products contained lead paint.

48. Plaintiff and other members of the Plaintiff Class would not have purchased the concerned products if Defendants had disclosed the dangers of their products, including that such products contained toxic levels of lead paint.

49. Plaintiff and the other Plaintiff Class members suffered actual damages as a result of Defendants' deceptive and unfair trade practices. Specifically, as a result of Defendants' deceptive and unfair trade practices, Plaintiff and the other Plaintiff Class members suffered

monetary losses, i.e., the purchase price of the products, which themselves are unfit for their intended purpose, and further can be expected to suffer in the future the cost of medical monitoring necessitated by the exposure of their children to the lead paint in Defendants' products.

50. By reason of the foregoing, Defendants are liable to Plaintiff and to the Plaintiff Class members in an amount to be proved at trial, including, but not limited to, treble damages or other penalties as may be appropriate under applicable law.

## COUNT II

(Breach of Implied Warranty)

51. Plaintiff re-alleges paragraphs 1 through 50 as if fully set forth herein.

52. Under the Uniform Commercial Code in New York and other states there exists an implied warranty of merchantability. *See* N.Y. U.C.C. § 2-314(1).

53. Defendants, in the manufacture, production, and sale of the products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for children and, in particular, young children.

54. Defendants breached the implied warranty of merchantability by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

55. The Medical Kits were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

56. Defendants knew or should have known that the products did not meet the capabilities as represented and marketed.

57. Before commencing this action, Plaintiff, through counsel, gave notice of the breach of warranty for all transactions involving the sale of Medical Kits painted with lead paint

12

and also gave notice that Plaintiff and all others similarly situated have and continue to sustain damage and harm.

58. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic, including both the cost of the defective product and the future cost of medical monitoring necessitated by the lead paint.

59. By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT III

### (Strict Liability)

60. Plaintiff re-alleges paragraphs 1 through 59 as if fully set forth herein.

61. Defendants are strictly liable for damages because:

   a) they placed the defective product, the toys covered in lead paint, in the stream of commerce;

   b) the condition of the products - being covered with lead paint - rendered them unreasonably dangerous;

   c) the inherently dangerous condition existed when the product left the control of Defendants; and

   d) the condition was a proximate cause of injury.

62. Plaintiff and the other members of the Plaintiff Class may recover for purely economic loss because their damages are proximately caused by Defendants' intentional, false representation that the products are safe when, in fact, they are not.

63. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including both the cost of the defective product and the future cost of medical monitoring necessitated by the lead paint.

64. By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT IV

(Unjust Enrichment)

65. Plaintiff re-alleges Paragraphs 1 through 64 as if fully set forth herein.

66. Defendants received from Plaintiff and Plaintiff Class members certain monies from their purchase of the toy Medical Kits which are excessive and unreasonable, and are the result of Defendants' deceptive conduct. The Medical Kits sold by Defendants were unreasonably dangerous and unfit for their intended purpose.

67. As a result, Plaintiff and other members of the Plaintiff Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on it.

68. Defendants will be unjustly enriched if they are allowed to retain such funds, and each Plaintiff Class member is entitled to an amount equal to the amount each Plaintiff Class member enriched Defendants and for which Defendants have been unjustly enriched.

69. By reason of the foregoing, Defendants are liable to disgorge to Plaintiff and the members of the Plaintiff Class the amount by which each Plaintiff Class member enriched Defendants and for which Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Plaintiff Class members request that the Court enter an order or judgment against Defendants including the following:

    a. Certification of the action as a Class Action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and Plaintiff's counsel of record as Class

      Counsel;

b.    Damages in the amount of monies paid for the Medical Kits and the costs of medical testing for lead poisoning;

c.    Damages in the amount of monies paid or to be paid for lead testing of the children handling the Medical Kits;

d.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

e.    Pre-judgment and post-judgment interest on such monetary relief;

f.    Other appropriate injunctive relief;

g.    The costs of bringing this suit, including reasonable attorneys' fees; and

h.    All other relief to which Plaintiff and members of the Plaintiff Class may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted by law.

Dated: New York, New York
November 16, 2007

                    Respectfully submitted,

                    HANLY CONROY BIERSTEIN SHERIDAN
                      FISHER & HAYES LLP

                    By: _____
                    Steven M. Hayes (SH-2926)
                    112 Madison Avenue, 7th Floor
                    New York, New York 10016
                    Telephone: (212) 784-6400
                    Facsimile: (212) 213-5349/(866) 800-1008

                    *Attorneys for Plaintiff & Class Members*

*Of Counsel:*

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Aron D. Robinson
THE LAW OFFICE OF ARON D. ROBINSON
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

Kenneth J. Brennan
SIMMONSCOOPER LLC
707 Berkshire Blvd.
East Alton, Illinois 62024

Telephone: (618) 259-2222
Facsimile: (618) 259-2251